# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| MICHAEL W. HENDERSON, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:07-CV-093-A |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### A. STATEMENT OF THE CASE

Plaintiff Michael W. Henderson filed this action pursuant to Sections 405(g) and 1383(c)(3)

of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of

Social Security denying his claim for disability insurance benefits under Title II and supplemental

security income or SSI benefits under Title XVI of the Social Security Act. Henderson applied for

disability insurance and SSI benefits on July 19, 2004, alleging disability commencing January 1,

2004, due to a back injury, illiteracy, cataracts, and headaches. (Tr. 68-69, 192). His insured status

for purposes of disability insurance benefits expired March 31, 2004. (Tr. 55).

The Social Security Administration denied Henderson's applications for benefits both initially and on reconsideration. Henderson requested a hearing before an administrative law judge (the "ALJ"), and ALJ J. Frederick Gatzke held a hearing on May 5, 2006, in Fort Worth, Texas. (Tr. 196-211). Henderson was represented by counsel. On July 27, 2006, the ALJ issued a decision that Henderson was not disabled and not entitled to disability insurance or SSI benefits because he retained the capacity for a modified range of light work.[1] (Tr. 16-23). The Appeals Council denied Henderson's request for review of his case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B.    STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837

F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.    ISSUES

Whether the ALJ complied with relevant legal standards and reached a decision that is supported by substantial evidence.

D.    ADMINISTRATIVE RECORD

1.    Treatment History

Henderson's medical records provide the following information about his impairments: Henderson was diagnosed with bilateral cataracts in June 2004. He underwent surgery on his right eye in August 2004 to remove the cataract and implant an intraocular lens to restore vision in that eye, but he needs additional surgery to correct the problems in his left eye. (Tr. 143, 166-74).

Henderson underwent a consultative internal medicine examination with Lee Etier, III, M.D., on August 31, 2004. (Tr. 143). Henderson was recovering from cataract surgery. He reported being illiterate despite being promoted through school until the ninth grade. Henderson also complained of low back pain since injuring his back in 1996 or 1997, which limited his ability to bend and lift. He denied having sciatica, but reported episodic central low back pain. He did not take medication

for his back condition. (Tr. 143). Henderson was 5'9" and weighed 115 pounds, but asserted that he had always been able to eat large amounts of food without gaining weight. (Tr. 143-44).

Henderson's vision was 20/70 in his left eye, and 20/30 in his right eye. Etier noted a moderate-sized cataract in Henderson's left eye. (Tr. 144). Henderson was able to bend over and reach his toes with relative ease and with no complaints of pain. Motor strength and deep tendon reflexes were symmetrical, and sensation was intact. (Tr. 145). Henderson was able to rise onto his toes and heels and tandem walk without difficulty. Lumbar x-rays showed minor arthritic changes. (Tr. 145, 146). The state agency medical consultants who reviewed the medical evidence and Henderson's disability applications opined that Henderson was capable of a full range of medium work activity. (Tr. 147-54).

Henderson participated in state rehabilitation services in an effort to find employment. As part of that process, Henderson saw Stevan Cordas, D.O., for a residual functional capacity assessment on February 21, 2005. (Tr. 114). He reported intermittent episodes of back pain that restricted his ability to lift and bend for three or four days, but his back condition was sometimes asymptomatic. (Tr. 117). On examination, Cordas noted some degree of spasm along the lumbar spine, but opined that this might be physiologic because Henderson was otherwise asymptomatic. Range of motion was not restricted in flexion or extension, but a straight-leg-raising test was positive at seventy degrees for localized back pain. Henderson demonstrated no asymmetry in his reflexes, and he was able to walk on his toes and heels. (Tr .118).

A physical functional capacity evaluation was also performed. (Tr. 119-20). The results indicated that Henderson was able to work within the light category of exertion, defined as exerting

up to twenty pounds of force occasionally and ten pounds frequently, but the physical therapist noted that there was a lack of consistency in the test results and self-limiting behavior by Henderson so that his actual abilities might be greater than those demonstrated during testing. (Tr. 119). Cordas also opined that Henderson's performance during the functional capacity examination was suboptimal, which invalidated the results of the evaluation. (Tr. 118).

Cordas diagnosed chronic low back syndrome and tobacco addiction, and opined that Henderson could stand for one or two hours at a time, for a total of two to four hours each day; sit for two to four hours at a time, for a total of four to six hours each day; walk for one or two hours at a time, for a total of two to four hours each day; climb up to four flights of stairs; and lift up to ten pounds frequently and twenty pounds occasionally. (Tr. 114-15). Cordas indicated that Henderson could occasionally bend or squat and could frequently reach overhead or at shoulder level. No limitations were noted in Henderson's ability to use his hands for fine work, grasping, pushing, pulling, low-speed assembly, or high-speed assembly. Cordas opined that Henderson could work six to eight hours per day. (Tr. 115).

Henderson also participated in vocational evaluation services with Goodwill Industries from April to June 2005. (Tr. 132). Vocational evaluator William Jorgenson prepared a vocational assessment that included the following findings: IQ testing in February 2005 showed Henderson to have a verbal IQ of 62, a performance IQ of 68, and a full scale IQ of 62. Henderson's reading comprehension was below a first-grade level, his spelling was at a first-grade level, and his arithmetic skills were at a second-grade level. (Tr. 132-33). Henderson was divorced and lived with his mother. He used the bus system for transportation. (Tr. 133). Henderson was able to recognize

common signs on doorways, but was described as "essentially a non-reader." (Tr. 134). Henderson's visual acuity was 20/30 in the right eye and 20/50 in the left eye. He reported that he had undergone cataract surgery on his right eye and anticipated having a similar surgery on his left eye. (Tr. 135). Jorgenson noted that Henderson's participation in the evaluation was sometimes "lagging" and there were problems securing his attendance at scheduled sessions. (Tr. 136-137).

Jorgenson recommended work adjustment training provided by Expanco to increase Henderson's productivity, improve his dexterity, and regenerate a work history. Jorgenson opined that future employment would likely involve bench assembly or packing jobs or perhaps extended sheltered employment, but Jorgenson also considered Henderson a good candidate for Social Security benefits given his back condition, mild mental retardation, and vision problems. (Tr. 132, 136).

2.      Administrative Hearing

At the hearing, Henderson testified that he was forty-six years old and completed the ninth grade. He had worked as a dishwasher, warehouse laborer, general laborer, or machine off-loader. He had most recently worked with a temporary agency, but they had difficulty finding suitable work for him because he was unable to read. (Tr. 199).

Henderson had undergone surgery on his right eye to remove a cataract, which restored his vision, but he needed cataract surgery on his left eye. (Tr. 200-01). He also testified that he had injured his low back in 1995. (Tr. 201). Henderson resided with his mother and helped her with the household chores. (Tr. 203-04). He testified that his mother did the grocery shopping and any necessary driving. He was able to help carry the groceries into the house, but testified that he could

not consistently lift that kind of weight all day long because it irritated his back. (Tr. 204-05).

When his back ached, he would lie down and put hot compresses on his back. (Tr. 205).

> The ALJ asked vocational expert Todd Harden to consider
>
> a hypothetical individual who's limited to work at the light exertional level which did not require driving, did not require reading, only occasional crouching, kneeling, and stooping, no crawling, and no climbing of ladders, or work on scaffolds. Would there be any jobs that exist in the national economy that such an individual could perform?

(Tr. 206). After dismissing Henderson's previous work as unsuitable because the work had exceeded light exertion, Harden testified that there were jobs that would meet the hypothetical criteria. Examples of suitable work included housekeeper (with 8,200 jobs in Texas and 100,000 jobs nationwide), dry cleaning bagger (with 3,200 jobs in Texas and 40,000 jobs nationwide), racker (with 1,200 in Texas and 15,000 nationwide), and advertising-material distributor (with 800 jobs in Texas and 10,000 jobs nationwide). (Tr. 206).

3.      ALJ Decision

The ALJ found that Henderson had not engaged in substantial gainful activity since January 1, 2004, and further found that Henderson had the following medically determinable impairments: bilateral cataracts, post surgical cataract extraction and implantation in the right eye; low back pain; and possible mild mental retardation versus borderline intellectual functioning, with illiteracy. (Tr. 16-17). The ALJ found that these impairments were severe, but did not meet or equal the criteria of Listing 12.05C or any other listed impairment described in the disability regulations. (Tr. 17).

Proceeding with the disability determination, the ALJ found that Henderson retained the residual functional capacity (RFC) for light work, restricted to lifting and/or carrying no more than

twenty pounds occasionally and ten pounds frequently; standing and/or walking for about six hours

per eight-hour workday; sitting for about six hours per eight-hour workday; occasional crouching,

kneeling, and stooping; no crawling or climbing of ladders, ropes, or scaffolds; no reading; and no

driving. (Tr. 20-21). The ALJ found that Henderson was unable to perform any of his past relevant

work, but based on the vocational expert's testimony, the ALJ found that Henderson was capable

of performing a significant number of other jobs existing in the national and local economies. (Tr.

21-22). Accordingly, the ALJ concluded that Henderson was not disabled and was not eligible for

disability insurance or SSI benefits. (Tr. 23).

D.      DISCUSSION

        1.      Listing of Impairments

        Henderson asserts that the ALJ should have found his mental impairment disabling at Step

Three of the sequential evaluation process based on Listing 12.05C:

> 12.05 Mental retardation: Mental retardation refers to significantly sub-average
> general intellectual functioning with deficits in adaptive functioning initially
> manifested during the developmental period; i.e., the evidence demonstrates or
> supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A,
> B, C, or D are satisfied.
> . . . .
> C.. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or
> other mental impairment imposing an additional and significant work-related
> limitation of function.

20 C.F.R. Part 404, Subpart P, app. 1, § 12.05C. Henderson asserts that he meets Listing 12.05C

based on his IQ scores and the ALJ's finding at Step Two that Henderson suffers from other

"severe" impairments. If a claimant's impairment is in the Listing of Impairments or is found to be

equivalent to a listed impairment, this raises the presumption of disability that makes further inquiry into work ability unnecessary. *See Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The claimant has the burden of proving that an impairment meets or equals a listing. *See id*. at 530-31, 110 S.Ct. 885.

The ALJ considered the criteria of Listing 12.05C, but questioned both the validity of Henderson's IQ scores and the existence of additional and significant work-related limitations. (Tr. 20). The ALJ noted that Henderson's participation in the physical and vocational evaluations had been sub-optimal, and further found that a finding of mental retardation was not consistent with Henderson's work history or overall history. The ALJ observed that Henderson had previously been married and lived with his wife and children, and even without the ability to read or write, he was able to learn and perform a variety of jobs over the years without any mention of special supervision or accommodation. (Tr. 20). Although the ALJ agreed that Henderson was limited to unskilled work because of intellectual and academic deficits,[2] the ALJ noted that Henderson had been capable of working with those deficits for many years. The ALJ further reasoned that Henderson's back injury imposed no significant work-related limitations and his vision had significantly improved with surgery. The ALJ concluded that, on balance, the record did not support Henderson's argument that he meet Listing 12.05C or any other listed impairment. (Tr. 20).

Henderson argues that the ALJ's reasoning is unreliable because there is no evidence of sub-optimal performance with respect to the IQ testing specifically. The IQ results are summarized in

_____

[2] Henderson reported a ninth-grade education, but denied attending special education classes while in school. (Tr. 72).

Jorgenson's report, but the IQ tests were administered by another individual several months before Jorgenson evaluated Henderson. No independent report from that individual is in the record, which is an omission that on its own casts doubt on the value of the IQ scores because the regulations require that IQ testing include both the objective data and a narrative report that discusses whether or not the scores are considered valid and consistent with the individual's developmental history and degree of functional restriction. 20 C.F.R. Part 404, Subpart P, app. 1, §12.00D. Moreover, an ALJ may make factual determinations about the validity of IQ tests, *Muse v. Sullivan*, 925 F.2d 785, 790 (5ᵗʰ Cir. 1991), and may reject IQ scores that are inconsistent with the rest of the record. *Clay v. Barnhart*, 417 F.3d 922, 930-31 (8ᵗʰ Cir. 2005); *Johnson v. Barnhart*, 390 F.3d 1067, 1071 (8ᵗʰ Cir. 2004) .

It was not unreasonable for the ALJ to find that Henderson's sub-optimal participation on more than one occasion during the multi-phase vocational assessment with Goodwill Industries cast doubt on the validity of the results obtained during that process. Nor was it unreasonable for the ALJ to take a longitudinal approach and consider Henderson's work and social history given that the listing itself dictates that the deficits in the claimant's adaptive functioning manifest themselves before the age of 22.[3] There is substantial evidence in the record to support the ALJ's determination that Henderson's IQ scores did not reflect his true level of functioning.

Henderson argues that the ALJ had a duty to seek clarification or additional evidence if he had doubts about the testing. The ALJ has a duty to develop the facts fully and fairly, and if he does

---

[3] Adaptive functioning refers to how effectively a person copes with common life demands and how well they meet the expected standards of personal independence. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 42  (4th ed. 1994)(DSM-IV).

not satisfy this duty, his decision is not substantially justified. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir.2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.1995). If necessary, the ALJ should recontact a treating or examining source to resolve any doubts or gaps in the record. *Newton*, 209 F.3d at 457-58. *See also* 20 C.F.R. §§ 404.1512(e), 416.912(e); Social Security Ruling 96-5p. But the failure to request additional information from treating or examining sources is reversible error only if prejudicial. The claimant must establish prejudice by showing that, if the ALJ had developed the record, additional evidence would have been produced that might have led to a different decision. *Newton*, 209 F.3d at 458. Even if the ALJ could or should have recontacted the vocational services provider for clarification, Henderson has not demonstrated that doing so would have produced additional relevant or material information that might have led the ALJ to find that Henderson met or equaled the criteria for Listing 12.05C.

Henderson also argues that the ALJ's determination at Step Two that he suffered at least two other severe impairments, namely, his back injury and cataract surgery, automatically satisfies the "additional and significant work-related limitation of function" requirement of Listing 12.05C. The regulations provide that the other physical or mental impairment contemplated by Listing 12.05C must be severe as defined by 20 C.F.R. § 404.1520(c) and § 416.920(c). Sections 404.1520(c) and 416.920(c) stop the disability process at Step Two unless the claimant has an impairment or combination of impairments that significantly limit the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. Part 404, Subpart P, app. 1, § 12.00A.

The Fifth Circuit has not addressed whether the de minimis *Stone* standard applied in this Circuit at Step Two is the equivalent of the "significant work-related limitation of function"

contemplated in Listing 12.05C for purposes of Step Three,[4] but assuming that the Fifth Circuit

would decide that a positive finding at Step Two correspondingly satisfies this aspect of Listing

12.05C as a matter of law, there is still no basis for disturbing the Commissioner's determination

at Step Three. An impairment must satisfy all of the criteria in the listing to meet that listing and

be found disabling, and the substantial evidence supports the Commissioner's decision that

Henderson did not meet other criteria of Listing 12.05C, regardless of the severity or significance

of his physical impairments. *See* 20 C.F.R. §§ 404.1525(d), 416.925(d). Moreover, the ALJ did not

dismiss Henderson's intellectual limitations, but included reading and driving restrictions in the

residual functional capacity assessment and the hypothetical question presented to the vocational

expert. Henderson has not demonstrated error or a lack of substantial evidence warranting reversal

of the ALJ's finding at Step Three of the sequential evaluation process.

2.　　Residual Functional Capacity

Henderson contends that the residual functional capacity (RFC) assessment is not supported

by substantial evidence because the ALJ did not give appropriate consideration to the opinions that

Jorgenson offered as part of Henderson's vocational rehabilitation evaluation. In particular,

Jorgenson recommended work adjustment training, sheltered employment for someone with

Henderson's restrictions, or possible bench or assembly-type work.

---

[4] *See Lafitte v. Apfel*, 81 F. Supp. 2d 669, 672-73 (W.D. La. 1999)(noting that Fifth Circuit has not addressed what constitutes "significant" for purposes of Step Three, but recommending award of benefits after applying the *Stone* standard to Listing 12.05C). *See generally Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). The regulations were amended in 2000 to clarify that the other physical or mental impairment contemplated by Listing 12.05C must be severe as defined by 20 C.F.R. § 404.1520(c) and § 416.920(c). 20 C.F.R. Part 404, Subpart P, app. 1, § 12.00A. *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50772 (Aug. 21, 2000).

Henderson acknowledges that Jorgenson does not qualify as an acceptable medical source, whose opinions are given special consideration under the regulations and administrative rulings. *See generally* 20 C.F.R. §§ 404.1527, 416.927. Nonetheless, evidence from other sources is considered useful to show the severity of an individual's impairment and how it affects an individual's ability to function. 20 C.F.R. §§ 404.1513(d), 416.913(d); SOCIAL SECURITY RULING 06-03p. There is a distinction between what the adjudicator must consider and what the adjudicator must explain in the disability decision; however, the adjudicator generally should explain the weight given to these other sources or otherwise ensure that the discussion in the decision will allow a claimant or subsequent reviewer to follow the adjudicator's reasoning. SOCIAL SECURITY RULING 06-03p.

Contrary to Henderson's assertions, the ALJ gave adequate attention to Jorgenson's vocational assessment. (Tr. 18-19). The ALJ summarized Jorgenson's findings and opinions, but noted that Henderson's participation in the process had been "less than optimal." In addition, the ALJ elsewhere reviewed the argument that Henderson would require additional and substantial job training, but dismissed this argument because Henderson's RFC would allow him to perform a significant number of unskilled jobs, which by definition require minimal to no training. (Tr. 20).

The ALJ's review of the record included sufficient consideration of Jorgenson's assessment of Henderson's vocational rehabilitation potential, nor has Henderson argued or demonstrated that the ALJ's assessment of his RFC is otherwise unsupported by substantial evidence.

3.      Vocational Evidence

Henderson asserts that substantial evidence does not support the ALJ's determination that

there was other work in the national economy that he could perform because the vocational expert testimony was based on an inaccurate hypothetical and thus unreliable. The hypothetical presented to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's residual functional capacity assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A claimant's failure to point out problems in a defective hypothetical does not salvage that hypothetical as a proper basis for a disability determination. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001).

One of Jorgenson's recommendations was to refer Henderson to a work adjustment training program with Expanco to increase Henderson's productivity, improve his dexterity, and regenerate a work history. In response to questions from Henderson's counsel, the vocational expert testified that people who were referred to work adjustment training services at Expanco would have a difficult time obtaining work on their own because of the application and interview process, although the vocational expert qualified this response by noting that this did not mean the person could not do the work once employed. (Tr. 209). The vocational expert also agreed that a person with a slowed production rate could find it difficult to find a competitive employment position, although this would depend on the worker's production speed and what a particular employer required. (Tr. 209). Henderson asserts that these responses illustrate the harm resulting from the ALJ's failure to properly assess and incorporate Jorgenson's opinions.

As previously discussed, the ALJ adequately considered Jorgenson's report and Henderson's performance during the vocational rehabilitation process. Henderson cites no authority that would

require the ALJ to incorporate limitations he does not accept in his RFC or present limitations he does not accept to the vocational expert for consideration. The ALJ's assessment of Henderson's residual functional capacity is supported by substantial evidence, and the record reflects that all of Henderson's vocationally relevant limitations recognized by the ALJ were incorporated in the hypothetical presented to the vocational expert. The vocational expert testimony provides substantial evidence to support the ALJ's determination that there were a significant number of other jobs that Henderson could perform and the ALJ's ultimate conclusion that Henderson was not disabled as that term was defined in the Social Security Act.

RECOMMENDATION

The Commissioner's decision denying Henderson's applications for disability insurance and SSI benefits should be affirmed.

NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until January 29, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.

*See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

<u>ORDER</u>

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until January 29, 2008, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JANUARY 8, 2008.


/s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE